LOFTUS v. ZIER.

(Court of Civil Appeals of Texas. El Paso. Dec. 4, 1913. On Rehearing, Jan. 15, 1914.)

1. APPEAL AND ERROR (§ 760*)—ASSIGNMENTS OF ERROR—BILL OF EXCEPTIONS.

An assignment of error complaining of a ruling on evidence will not be considered, where the brief of appellant does not refer to any bill of exceptions covering the matter.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3095; Dec. Dig. § 760.*]

2. APPEAL AND ERROR (§ 1033*)—QUESTIONS REVIEWABLE—ERRORS FAVORABLE TO PARTY COMPLAINING.

An error favorable to appellant is not reversible.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

On Rehearing.

3. EVIDENCE (§ 253*)—CONSPIRACY—DECLARATION OF CONSPIRATORS—ADMISSIBILITY.

Where, in an action for fraud inducing plaintiff to become a lessee of a business, the petition charged a conspiracy between the owner and a third person, alleged to have been in possession under a prior lease for a term which had not expired, and the existence of the conspiracy was shown, statements made by the third person as to the cause of the owner and of the third person ceasing to operate under the lease were admissible against the owner.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 994–1002; Dec. Dig. § 253.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by Harry Zier against T. F. Loftus and another. From a judgment for plaintiff, defendant named appeals. Reversed and remanded.

Fisher, Campbell, Amerman & Sears, of Houston, for appellant. W. J. Johnson and Edward S. Boyles, both of Houston, for appellee.

HIGGINS, J. The nature of this suit, as stated by the appellee in his brief, is as follows: "Plaintiff, Harry Zier, sued defendants, T. F. Loftus and Frank McKenzie, by filing his original petition on April 20, 1911, and for trial pleading used his second amended original petition. This suit is for damages for the procuring of a lease contract, wherein T. F. Loftus was lessor and Frank McKenzie and Harry Zier were lessees, because of the vice of fraudulent acts, statements, and concealments, on the part of said Loftus and McKenzie, in the conception, inception, consummation, continuation, and forcing of a breach of said lease contract, and because said vice was with premeditation, was willfully and maliciously done, for exemplary damages. The allegations are that in August, 1910, Zier got into communication with defendants by having read an advertisement, bearing McKenzie's name, published August 3–9, 1910, in a daily newspaper circulated in Harris county, Tex.; that the initial communications were by mail, bearing McKenzie's name, and later in person; that upon Zier personally inquiring, McKenzie informed him that he was the lessee in a valuable lease from Loftus (obtained under a prior lease renewal option clause), with an unexpired term of nearly two years, on two moving picture places and paraphernalia used therein, both located in the city of Houston, Harris county, Tex.; that said shows were then producing plenteous profits, but, through a personal entanglement, he, McKenzie, became indebted to his landlord, Loftus, and had his note as an evidence thereof; that said business had not only supported his family, but also paid off all but $500 of said debt, which sum was now past due, and therefore Loftus was harrassing him, in that he, McKenzie, had turned over to Loftus said lease and the controlling management of the picture show business to assure payment of said debt; that Loftus thus learned this to be a profitable business, and was now about to dispossess McKenzie of same, but, in order that he might save a portion thereof for himself, he, McKenzie, advertised as appellee had read; that the price asked for a one-half interest in said lease or business was $650, to be paid in this wise: $500 to Loftus to clear said debt and lift said partly paid partly past-due note, and $150 to Loftus for rent for one week in advance for said theaters under the terms of the purported Loftus-McKenzie lease; that Zier requested sight of the lease and truthful book proof of the allegations in respect to the profitableness of the business, to which McKenzie replied that, Loftus having possession and control of the lease and business, he also had the books and kept the accounts therein, and for further information he would be compelled to call upon Loftus; that Zier was conducted to Loftus' office, where he met Loftus, who then reiterated and confirmed McKenzie's statements concerning McKenzie's indebtedness and the business profits, and, in addition thereto, Loftus stated that the original amount of the said debt and note was $2,000, exhibited the note with payment indorsements on the back thereof, showing a balance due of $500; that Loftus—not McKenzie—exhibited the lease; that both

said it was a valuable lease on a profitable business, and that he, Loftus, held it as security for his loan to McKenzie; that Zier could not do better elsewhere; that, being then unable to locate the expense account books, Zier could rely on his, Loftus', word that the joint expenses outside of rent never exceeded $250 per week; that Loftus exhibited two purported receipt account books and entries thereon, which Loftus stated to be the actual earnings of said business; that both told Zier, as said advertisement stated, that no experience was necessary on Zier's part to successfully conduct the picture show business; that Loftus stated he would permit his personal security electric light and power bond, with the light and power company, to stand for the benefit of Zier and McKenzie as a part of the general (tri-party) transaction; that Zier examined said receipt entries, and they showed a handsome profit then being made out of said business, with the expenses as stated by Loftus; that Zier, trusting the defendants, particularly Loftus, to be honest, upright business men, believing and relying upon them and their exhibits, etc., purchased said advertised one-half interest in said lease or business by paying to McKenzie $5 earnest money, $495 to Loftus (balance of $500) to pay said debt claim of Loftus against the business and lift said note, Loftus then destroying the note, plus $150 in advance, for the first week's rent, totaling $650; that Loftus then executed a new lease, with McKenzie and Zier as his lessees, for a period of 260 weeks, at a rental of $150 per week—not month. That under this lease, Zier, having gone into possession August 22, 1910, paid a further $150 to Loftus for the second week's—not two week's—rent, thus paying a total of $800 directly to Loftus; that all of said representations, etc., of both defendants were, with precognition, false, in that said advertisement carrying McKenzie's name was the product of and was placed and paid for by Loftus; that said letter to Zier, bearing McKenzie's signature, was the product of and was written in Loftus' hand; that said purported Loftus-McKenzie lease or leases were fictitious, McKenzie being only a hired employé of Loftus; that he did not owe Loftus any amount as the balance due on his note, which was also fictitious; that the figures and accounts which Loftus exhibited to plaintiff were not the true receipts and expenses of said showhouses, and were fraudulently prepared by Loftus; that while Zier was operating said shows, Loftus, contrary to his declarations, canceled his light and power bond without notice to Zier, and maliciously intermeddled with Zier's performers and employés, causing the best of them to quit Zier's employ; that McKenzie deserted Zier; that Loftus, with others, harrassed and threatened Zier to force him out; that said business was not a money-making, but worthless, business, all resulting in plaintiff being forced to abandon said business before the expiration of two weeks, 'and that plaintiff did not make enough money out of said business to pay the salaries of the employés and performers'; that all of these representations and acts of both defendants were made and done as a part of the general plan and scheme to deceive and defraud the public generally (naming several similarly defrauded) and plaintiff in particular. That as a continuation of said general fraudulent scheme and conspiracy, Loftus, in order to retain said moneys, entered into further machinations with McKenzie and his wife, Maggie McKenzie, in that, when Loftus learned that McKenzie had confessed or admitted the intrigue and cabal of himself and Loftus herein, he, Loftus, paid McKenzie and wife to leave, and did procure their absence from the jurisdiction of all the courts of Harris county, Tex.; that this variety of fraudulent conduct on the part of defendants was willful and malicious, conceived by Loftus, and carried out primarily by him and McKenzie. Plaintiff asked to recover as actual damages only his $800 paid direct to Loftus, with interest thereon, and for $10,000 exemplary damages."

Appellee's contention, as stated by him, is: "That Loftus owned and operated said theaters for and in his own benefit; that upon their proving a financial failure (both now dismantled and abandoned), he sought to reimburse himself by means of making McKenzie a fictitious lessee, a fictitious debtor, maker of a fictitious promissory note or notes to evidence the debt, a fictitious vendor of a half interest in said fictitious lease, by having McKenzie tell a fictitious hard-luck story as a plausible reason for selling an interest in a purported money-making business, by declaring said business to be a money-making enterprise, using fictitious indorsements of payments on the back of said note, and fictitious expense and earning accounts, together with defendant's statements that Loftus held these various purported assets as good and sufficient security for said debt so as to substantiate their said declarations of the profitableness of said enterprise; that having thus induced an unsuspecting individual, plaintiff being one such, to purchase the purported interest, they next set about to force out the old or young, woman or man, who purchased and paid their money for such interest, so they could repeat the process ad infinitum; that Loftus received these moneys, including plaintiff's, except for a $50 commission paid McKenzie for each 'sale'; that in the interim, McKenzie was general caretaker of the theaters, while Loftus hired, discharged, bought, sold, and paid for all necessities in the conduct of said business, McKenzie turning over the earnings to Loftus every morning; that while the receipt account books showed a steady and unbroken income from said theaters, one or the other theater was closed

part of the time covered by said unbroken entries, and that said books also contained entries for a certain period when neither Loftus nor McKenzie had possession of, nor access to, the earnings of said theaters, and that, for that period, the figures shown by Loftus were in excess of what was actually earned by said theaters, and that these padded figures were among those shown to plaintiff Zier; that the representation that said business was a moneymaker was false; that 'the business' was worthless; that the receipts of said business under plaintiff's and McKenzie's joint management were not enough to pay the expenses, employés, and performers, so that, with other causes, Zier was forced to abandon said business, at a loss additional to the $800 paid to Loftus, and he was therefore entitled to recover the entire amount which he had paid out to defendant Loftus, together with exemplary damages; that as a continuation of this conspiracy, Loftus procured his codefendant, coconspirator, McKenzie, together with McKenzie's wife, to leave the jurisdiction of Harris county courts, so their testimony in reference to the facts of this and other similar transactions could not be used; Loftus, in the meantime, however, getting McKenzie under the influence of intoxicating liquors, and then procuring his perjuring of himself while in that condition—thus making doubly certain of preventing or ruining McKenzie's testimony, and keeping them out of Texas."

Appellant's contention, as stated in his brief, was: "That said lease contract from himself to McKenzie was genuine, and that McKenzie was conducting said business on his own account; that the note of McKenzie held by him was a bona fide note; that the figures and accounts of the receipts and disbursements of said business, which he showed to the plaintiff, were those which he kept of the receipts and disbursements made in said business by McKenzie, as given to him by McKenzie, and that he made no other representations to the plaintiff in reference to the nature and character of said business, but that the plaintiff dealt with McKenzie, and got all of his information from McKenzie, and finally bought from McKenzie a one-half interest in said business; that McKenzie took up from Loftus his note, with part of the purchase money paid to him by plaintiff, and paid one week's rent with the balance of the purchase money; that the transaction was one entirely between the plaintiff and McKenzie, and that the only thing that Loftus did in reference to the transaction was to execute to plaintiff and McKenzie a new lease contract, after plaintiff and McKenzie had made their trade. The defendant Loftus denied that he had made any effort to procure McKenzie and his wife, or either of them, to leave the jurisdiction of the court, and also denied that there was any collusion between him and said McKenzie."

Upon trial before a jury a verdict in favor of the appellee was returned for $800 actual and $500 exemplary damages, upon which judgment was accordingly rendered, from which this appeal is prosecuted by the defendant Loftus.

The first, second, and third assignments relate to the action of the trial court in overruling special exceptions directed against the petition, upon the grounds that same was prolix, redundant, filled with surplusage, and contained irrelevant, immaterial, improper, and prejudicial allegations. The petition covers 40 pages of typewritten matter, and is abundantly subject to each and every one of the objections urged against it, and the exceptions should have been sustained.

[1] The fourth assignment complains of a ruling upon the admission of evidence. The record in this case is voluminous in the extreme, containing 47 bills of exception alone, covering 48 pages of typewritten matter. The brief does not refer us to any bill of exception taken to the action of the court upon the matter here presented, and this court will not search the record for the purpose of ascertaining if a proper bill was taken. In the absence of reference to bill of exception covering the matter, this assignment cannot be noticed.

For a like reason we cannot consider the eighth assignment.

There are approximately 40 assignments, complaining of rulings of the court upon evidence. To undertake to discuss each of these assignments in detail would prolong this opinion to unconscionable length, and the same will therefore not be done.

There is a vast amount of improper, irrelevant, immaterial, hearsay, and incompetent testimony, the admission of which is assigned as error in the sixth, ninth, seventeenth, seventeenth and a half, eighteenth, nineteenth, and twenty-first to forty-second assignments of error, both inclusive. Some of the evidence objected to is admissible, but the greater portion is improper. The assignments are therefore sustained.

Assignments 7, 12, 15, 16, and 20 are regarded as being without merit and are overruled. Part of the testimony referred to in the eleventh, thirteenth, and fourteenth assignments is subject to the objection urged against it, but the material testimony therein objected to seems to be admissible in this state under the rule announced in Compagnie, etc., v. Victoria, etc., 107 S. W. 651, and Witliff v. Spreen, 51 Tex. Civ. App. 544, 112 S. W. 99. Upon the authority of the cases mentioned and the cases therein cited, we overrule the assignments of error last mentioned.

The materiality of the testimony referred to in the tenth assignment is not apparent, and in any event its exclusion does not present reversible error.

[2] The error complained of under the forty-third assignment was favorable to appellant, and therefore does not present reversible error.

Considering the charge as a whole, the error assigned in the forty-fourth and forty-fifth assignments is likewise harmless.

The forty-sixth to fifty-second assignments, inclusive, are regarded as being without merit and are overruled.

Reversed and remanded for the errors indicated.

### On Rehearing.

By inadvertence there was a failure to pass upon appellant's fifth assignment in the original opinion rendered herein.

[3] It complains of testimony of plaintiff as to certain statements made to him by McKenzie. A conspiracy between McKenzie and Loftus was pleaded, and the fact of its existence raised by the evidence. Therefore the statements made by McKenzie relating to the alleged cause of the actors ceasing work was admissible; but, as to the remaining statements made by him, they were improper and inadmissible upon any theory.

The position originally assumed regarding the eleventh, thirteenth, and fourteenth assignments is adhered to. As an original proposition, we would not be disposed to regard the testimony referred to in the assignments as admissible, but in the two cases cited, it has been otherwise decided, and we are not disposed to dissent from the conclusion there reached. The assignments are overruled solely upon the authorities cited.

Appellant in his motion for rehearing requests that we indicate specifically the testimony regarded as admissible in the numerous assignments of error discussed in the original opinion, and that which is deemed inadmissible. To do so would protract the opinion to a wholly unreasonable length, and we see no necessity for so doing, since the trial court should readily be able to determine the irrelevant, immaterial, and incompetent testimony as distinguished from that which is relevant, material, and competent.

The motion for rehearing is overruled.